UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

THOMAS H. CARSON,

        Plaintiff,

vs.                                 Case No. 8:08-cv-1361-T-23MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

    This cause is before the Court on Plaintiff's appeal of an administrative decision

denying his application for Social Security benefits. The Court has reviewed the record,

the briefs and the applicable law. For the reasons set forth herein, it is recommended

the Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

    Plaintiff filed an application for a period of disability and disability insurance

benefits ("DIB") on May 22, 2003, alleging an inability to work since October 1, 1991.

(Tr. 134A). The Social Security Administration ("SSA") denied the application initially

and upon reconsideration. (Tr. 40-41, 61-62). Plaintiff then requested and received a

hearing before an Administrative Law Judge ("ALJ") on March 16, 2005. (Tr. 206-28).

On November 23, 2005, the ALJ issued a decision finding Plaintiff was not disabled.

---

[1] Specific, written objections may be filed in accordance with 28 U.S.C. § 636 and Rule 6.02, Local Rules, United States District Court, Middle District of Florida, within ten (10) days after service of this document. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

(Tr. 45-51).

Plaintiff appealed the ALJ's decision and on April 20, 2007, the Appeals Council vacated the decision and remanded the case to the ALJ. (Doc. 14, pp. 20-22). The ALJ was instructed to: give further consideration to a treating source opinion, obtain evidence through a medical expert regarding the nature and severity of Plaintiff's impairments, and, if warranted, obtain evidence from a vocational expert ("VE"). Id. On January 8, 2008, Plaintiff received a second hearing before the ALJ. (Tr. 481-524). However, on February 20, 2008, the ALJ again issued a decision finding Plaintiff was not disabled. (Tr. 15-25). Plaintiff timely filed his Complaint in the U.S. District Court on September 18, 2008. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since October 1, 1991, due to a back injury, a heart condition, gastroesophageal reflux disease ("GERD"), irritable bowel syndrome, and diarrhea.

### B. Summary of Relevant Evidence Before the ALJ

Plaintiff was fifty-one years of age on March 31, 1997, his date last insured. (Tr. 134G). Plaintiff graduated high school and had past relevant work as a salesman and manager. (Tr. 485-87). On May 22, 2003, Plaintiff completed a disability report. (Tr. 135-44). Plaintiff reported his back injury began in 1963 and limited his ability to sit for any period of time, bend, or lift. (Tr. 136).

From November 29, 1981 to December 14, 1981, Plaintiff was seen at St.

2

Anthony's Hospital. (Tr. 237-307). Plaintiff was admitted to St. Anthony's because of severe low back and left lower extremity pain. (Tr. 307). Plaintiff underwent a hemilaminectomy at L5-S1 and his L5 disc was excised; however, he was discharged relatively pain free. Id. From November 5, 1986 to December 8, 1986, Plaintiff was seen at Humana Hospital in St. Petersburg. (Tr. 308-20). Plaintiff had been experiencing numbness in his feet and toes since his surgery in 1981. (Tr. 316). Also, Plaintiff was experiencing a lower backache as a result of falling to the floor in the fall of 1986. (Tr. 310). At his initial Humana consultation, Plaintiff was diagnosed with a herniated intervertebral disc disease at L5-S1. (Tr. 316-17). On December 8, 1986, Plaintiff underwent a bilateral lumbar laminectomy at L5-S1. (Tr. 308-09). Plaintiff was discharged in "good condition." (Tr. 309).

On June 17, 1997, Plaintiff was examined by Dr. Michael J. Smith, M.D. regarding pain in his back. (Tr. 420-21). Plaintiff stated to Dr. Smith he had been "doing well until recently when he . . . developed some left lower lumbar pain." (Tr. 420). Plaintiff's forward flexion was ninety degrees, but Dr. Smith diagnosed him with degenerative joint disease of the lumbosacral spine. (Tr. 420-21).

On April 19, 2001, Plaintiff saw Dr. Eduardo N. Raheb, M.D., who had performed his past surgeries. (Tr. 368). Plaintiff stated he injured his back on March 15, 2001. Id. Dr. Raheb diagnosed him with sacroiliac joint synovitis and left side degenerative disc disease at L5-S1. Id. On May 21, 2002, Plaintiff again visited Dr. Raheb, who diagnosed him with sacroiliac joint synovitis. (Tr. 357). On December 23, 2002, Dr. Raheb wrote a letter regarding Plaintiff's condition. (Tr. 363). After reviewing Plaintiff's records, Dr. Raheb wrote Plaintiff was "unable to be gainfully employed because he

3

[was] unable to sit for any length of time" and "he [could] not bend or lift without severe pain." Id. Dr. Raheb noted that, in his opinion, Plaintiff's back problems started in the 1960s and had continually gotten worse. Id.

On October 24, 2003, Plaintiff returned to Dr. Smith. (Tr. 425-27). Physical examination revealed tenderness in Plaintiff's lower lumbar spine. (Tr. 426). On November 3, 2003, Dr. Smith wrote a letter regarding Plaintiff's impairments. (Tr. 419). Dr. Smith's medical diagnosis at that time was osteoarthritis of the lumbar spine, but he deferred to Dr. Raheb's determination as to whether Plaintiff could work. Id.

In a letter dated March 23, 2005, Dr. Guillermo Suarez, M.D. indicated he treated Plaintiff for incapacitating severe back pain from 1975 until 1996. (Tr. 445). Dr. Suarez indicated that following surgery in 1986, Plaintiff was recommended not to lift, pull, or push over ten pounds; to avoid prolonged sitting for more than fifteen minutes at a time; to avoid kneeling, bending, and twisting; and to avoid ladders, platforms, and elevated surfaces. Id. Dr. Suarez concluded "within a reasonable degree of medical certainty, that Mr. Carson was unable to be employed from 1992 until 1996, which was the last time [he] saw and treated him." (Tr. 446). Notably, Dr. Suarez stated he kept Plaintiff's files for seven years, but they were later destroyed. Id. Because the files were destroyed, he relied on the microfiche from St. Petersburg General Hospital. Id.

Additionally, Dr. Suarez completed a medical source statement. (Tr. 442-44). When asked how much Plaintiff could lift "occasionally" and "frequently," Dr. Suarez wrote "n/a." (Tr. 442). Dr. Suarez indicated "standing/walking" and sitting were affected by the impairment. (Tr. 443). Plaintiff could stand for ten minutes at a time for a total of two to three hours a day and sit for ten minutes at a time for a total of two hours a day.

Id.  Dr. Suarez also determined Plaintiff was unable to reach, handle, push, or pull.  Id.

According to Dr. Suarez, Plaintiff was "able to work [zero] hours per day, [zero] hours

per week."  (Tr. 444).

From January 1996 through October 1997, Plaintiff was seen at The Heart

Institute by Dr. Dean A. Bramlet, M.D.  (Tr. 348-52).  Plaintiff had several positive

cardiac risk factors.  (Tr. 348).  In January 1996, Dr. Bramlet's impression was

"[i]ntermittent sinus bradycardia" and "[o]ccasional PVCs with short periods of

ventricular trigeminy."  (Tr. 349).  In July 1996, Plaintiff showed no evidence of

significant ischemia on stress testing.  (Tr. 350).  There was no indication in the record

Plaintiff returned to The Heart Institute after 1997.

In December 2000, Plaintiff was treated with Reglan for GERD and an ulcer.  (Tr.

441).  As a result of taking Reglan, Plaintiff developed dyskenesia.  (Tr. 430, 449-451).

From January 2001 to December 2003, Plaintiff visited Dr. Harry B. Sperber, M.D.

regarding his stomach.  (Tr. 439-40).  In December 2003, Dr. Sperber indicated "there

[was] really nothing dramatic to explain ["Plaintiff's"] symptoms."  (Tr. 431).  Additionally,

Plaintiff's endoscopic examination showed "only mild gastritis with a little bit of antral

fold thickening."  (Tr. 431).

In 2003, Plaintiff's file was reviewed by two non-examining state agency

consultants.  (Tr. 372-79, 411-18).  Both consultants opined Plaintiff was capable of

medium work[2] during the relevant period.  (Tr. 372, 411).  The consultants specifically

---

[2] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or
carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine
that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567 (2008).

determined Plaintiff could "stand and/or walk (with normal breaks) for a total of" about six hours in a eight-hour workday. Id. Plaintiff was also deemed capable of sitting for about six hours in an eight-hour workday. Id.

Plaintiff testified before the ALJ on two occasions: March 2005 (Tr. 457-78) and January 2008 (Tr. 481-524). In March 2005, Plaintiff testified he had GERD beginning in 1965. (Tr. 463). Plaintiff stated he was in sales until 1991 and a boat captain from 1993 until 1997. (Tr. 464-65). He asserted his back problems had been continuous since 1991 or 1992. (Tr. 470). Because of his back problems, Plaintiff said he could sit for about an hour before he had to move and could walk for five to ten minutes before he needed to stop and sit. (Tr. 475). Plaintiff had been found one-hundred-percent disabled by the Veteran's Affairs ("VA") since 2004 because of problems unrelated to his back. (Tr. 473-74).

In January 2008, Plaintiff discussed the pain he was feeling in 1991. (Tr. 503-05, 511, 515). Plaintiff stated that, in 1991, he could sit for twenty to thirty minutes at a time and could not sit for six hours out of an eight-hour day. (Tr. 503-04). Plaintiff noted that, in 1991, he could walk for fifteen or twenty minutes at a time but could not stand in one place for any amount of time. (Tr. 505). When asked to rate his pain from 1991 on a scale of one to ten, Plaintiff responded, "Maybe seven." (Tr. 515). When Plaintiff stopped working in 1991, he was not able to sit, stand, lift, or bend at all. (Tr. 511).

### C.    Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(l), 423(d)(1)(A); 20 C.F.R. § 404.1505 (2008).[3]  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520.  First, if a claimant is working at a substantial gainful activity, he is not disabled.  29 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

At step one in the instant case, the ALJ found Plaintiff had not engaged in substantial gainful activity during the relevant period from his alleged onset date of October 1, 1991 through his date last insured of March 31, 1997.  (Tr. 18).  At step two, the ALJ determined Plaintiff had the following severe impairments: "Herniated Nucleus Pulposus (HNP) with Status Post-Surgical Procedure [and] Sinus Bradycardia."  Id.  The ALJ rejected plaintiff's GERD because he could not definitively show it began as early

_____

[3]  All further references to the C.F.R. will be to the 2008 version unless otherwise noted.

as spring 1997. (Tr. 18-19). At step three, the ALJ concluded Plaintiff did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19).

The ALJ then determined Plaintiff, through the date last insured, retained a residual functional capacity ("RFC") to "perform a full range of light work in safe work settings (no climbing to unprotected heights) with occasional stooping." (Tr. 20-21). In determining Plaintiff's RFC, the ALJ first considered the opinion evidence of record. (Tr. 19-20). The ALJ gave little weight to the opinion of Dr. Suarez that Plaintiff was unable to be employed during the relevant time period. Id. The ALJ noted: it was not clear how long Plaintiff's post-surgery limitations were to last; the rationale for Plaintiff's sitting limitation "seemed to apply to the present period;" Dr. Suarez wrote "n/a" for the crucial exertion limitations; there was a long period between Dr. Suarez's treatments and his report; Dr. Suarez relied on the hospital microfiche to refresh his memory because he did not have his files; and Dr. Suarez did not present the evidence on which he based his opinions. Id.

The ALJ also gave little weight to the opinion of Dr. Raheb that Plaintiff was disabled. (Tr. 20). While noting the Appeals Council did not emphasize Dr. Raheb's opinion, the ALJ observed that records from Dr. Raheb in the fifteen years between the operation and the report were sparse, particularly during the period in question. Id. Instead of ordering a consultative examination, which would do little more than describe Plaintiff's status at that time, the ALJ considered more recent medical records. Id. The ALJ rejected Dr. Smith's recent opinion because even his earliest examination was a few months after the date last insured, he was non-committal about disability even well

8

after the date last insured, and he had not discussed the possibility of limitations before deferring to Dr. Raheb.  Id.

Because the subsequent medical evidence could not be considered conclusive in regard to the period of coverage, the ALJ considered the evidence itself.  Id.  The ALJ first noted most of Plaintiff's back problems preceded the relevant time period.  Id. Specifically, the ALJ noted that reports seemed to end with the 1986 back procedure until Dr. Smith's examination three months after coverage.  Id.  Following Dr. Smith's 1997 examination, there was no record regarding Plaintiff's back until 2001.  Id.  Thus, the ALJ concluded that with few records in the five years before 1991 and almost four years after the date last insured, the 1990s were "relatively quiescent in regard to [Plaintiff's] spine."  Id.  The ALJ also discussed the post-date-last-insured findings, concluding "even the predominant spinal infirmary would have allowed for 'light' work duties."  (Tr. 21).

Next, the ALJ considered the records dealing with Plaintiff's heart from 1991 to 1997.  Id.  After noting the heart records seemed limited to a small cluster of evaluations in 1996 with a few follow-ups months after the date last insured, the ALJ decided to leave out heights as a permissible postural activity.  Id.  He also noted Plaintiff's near syncope had resolved in 1996.  Id.  Although Plaintiff may have had abnormal coronary motion and potential risk factors, the ALJ did not believe the coronary condition would have prevented light work.  Id.

Finally, the ALJ considered Plaintiff's credibility.  (Tr. 23).  After determining Plaintiff's medically determinable impairments could have been reasonably expected to produce some of the alleged symptoms, the ALJ stated Plaintiff's statements

concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible with regard to his status during the relevant period.  Id.  The ALJ provided several reasons for discounting Plaintiff's credibility, including: Plaintiff did not always cooperate with treatment; at home, Plaintiff did chores and driving consistent with light work; Plaintiff was inconsistent in regards to physical complaints in the first part of the 1990s; Plaintiff stated he could only sit for twenty to thirty minutes, but remained sitting during the long hearing before the ALJ without difficulty; and Plaintiff's complaints were not supported by the medical signs and laboratory findings during the relevant time period.  Id.

At step four, the ALJ utilized the testimony of a vocational expert ("VE") during the hearing to determine whether Plaintiff could perform any of his past relevant work. (Tr. 24).  The VE testified that Plaintiff's capacity for light duty in 1997 was compatible with work as a salesman and sales manager.  Id.  Based on the VE testimony, the ALJ determined Plaintiff was able to perform his past relevant work as it was actually and generally performed.  Id.  Thus, the ALJ concluded Plaintiff was not disabled at any time during the relevant period.  Id.

III.    ANALYSIS

A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.    Issues on Appeal

Plaintiff argues several issues on appeal.  Plaintiff asserts: the Appeals Council inadequately investigated Plaintiff's appeal, the ALJ failed to give proper weight to the opinion of Plaintiff's treating physicians, the ALJ failed to have a medical expert testify, the ALJ failed to recognize all of Plaintiff's impairments, the ALJ improperly determined Plaintiff's RFC, the ALJ failed to present a complete hypothetical, and the ALJ's step four analysis was incorrect.  (Doc. 14, pp. 1-18).  The Commissioner, however, argues Plaintiff did not meet his burden of proving he was disabled on or prior to his date last

insured. (Doc. 15, pp. 7-16). The Court will examine each of these claims.

1. **Whether the Appeals Council adequately investigated Plaintiff's appeal**

Plaintiff argues the Appeals Council was unable to adequately investigate his appeal because the record did not contain a copy of the April 20, 2007 Appeals Council Order or a letter from Plaintiff's counsel seeking a disc of the testimony and a copy of the file. (Doc. 14, pp. 1-2). Specifically, Plaintiff argues these items were new evidence under Sentence Six of 42 U.S.C. § 405(g). Plaintiff attached the Order and letter to his memorandum. (Doc. 14, pp. 20-23). Because these items would not be expected to change the outcome, however, the Court finds Plaintiff's argument unpersuasive. While Plaintiff believes a copy of the April 20, 2007 Appeals Council Order might have informed the Appeals Council of what the ALJ was to do, the ALJ actually outlined the basis for remand in his decision. (Tr. 15). Additionally, Plaintiff's letter did not provide any new evidence at all. (Doc. 14, p. 23). Thus, the Court declines to remand based on evidence not expected to change the outcome of the instant case.

2. **Whether the ALJ failed to give proper weight to the opinion of Plaintiff's treating physicians**

Plaintiff makes two arguments regarding the ALJ's evaluation of treating source opinions. First, Plaintiff argues the ALJ did not explain the weight given to the opinions of Dr. Suarez, Dr. Raheb, Dr. Smith, or Dr. Sperber. Second, Plaintiff contends the ALJ gave improper weight to the opinions of Dr. Suarez and Dr. Sperber. The Commissioner asserts the ALJ adequately considered the opinions of Plaintiff's treating physicians, properly choosing not to accord them controlling weight.

Treating source opinions are generally entitled to increased weight. 20 C.F.R. § 404.1527(d)(2). Specifically, if the ALJ finds a treating source's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [he/she] will give it controlling weight." Id. In fact, the opinions of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41. In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he or she must clearly articulate the reasons for so doing. Id. at 1241.

Regarding the opinions of Dr. Suarez, the ALJ specifically stated Dr. Suarez's proscriptions "must largely be ruled out and do not deserve controlling weight." (Tr. 23). Accordingly, he properly stated the weight he accorded Dr. Suarez's opinions. Additionally, the ALJ articulated the requisite "good cause" to give Dr. Suarez's opinion less than substantial weight. While the ALJ gave several reasons he did not give much, if any, weight to the opinions of Dr. Suarez, the most significant was that Dr. Suarez did not present any films or hard copies of the records he reviewed in forming his opinion. (Tr. 19-20). Further, the ALJ pointed out there was nothing particularly unusual that might have made Plaintiff's impairments memorable after so long. (Tr. 20). Dr. Suarez rendered his opinions regarding Plaintiff's limitations in March 2005, at least eight years

after last treating him. (Tr. 442-46). Because substantial evidence supports the ALJ's finding that Dr. Suarez's opinions were "not bolstered by the evidence," the ALJ had good cause to assign them less than substantial weight. Thus, the ALJ did not err in failing to state with specificity the weight given to the opinions of Dr. Suarez or in giving those opinions minimal weight.

Regarding Dr. Sperber, the Court finds no evidence of any opinion regarding Plaintiff's limitations for the ALJ to accord significant weight. Plaintiff argues that because Dr. Sperber stated Plaintiff had GERD since the 1960s, GERD should have been found a severe impairment during the relevant period. (Doc. 14, pp. 10-11). However, while Dr. Sperber may have opined Plaintiff had GERD since the 1960s (Tr. 200), there was no indication when the impairment became severe and how it would have affected Plaintiff's work status. Severity "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Moreover, while the VA eventually deemed Plaintiff one-hundred percent disabled based partially on Dr. Sperber's diagnosis, that decision was made in 2004, seven years after the date last insured. (Tr. 199-202). Thus, while Plaintiff may have had severely limiting GERD at the time of his hearing before the ALJ, there was no indication from Dr. Sperber that GERD severely limited Plaintiff from 1991 through 1997. Accordingly, the ALJ did not err in failing to find Plaintiff's GERD severe during the relevant time period based on the opinion of Dr. Sperber. Additionally, because Dr. Sperber did not give an opinion regarding Plaintiff's limitations or work status during the relevant period, the ALJ did not err by failing to give specific weight to Dr. Sperber's

14

opinion.

Plaintiff also argues the ALJ did not specifically state the weight given to the opinions of Dr. Raheb. (Doc. 14, p. 3). However, the ALJ specifically stated on two occasions he was not giving the opinion of Dr. Raheb significant weight. (Tr. 20, 23). In making that determination, the ALJ noted Dr. Raheb's opinion that Plaintiff was unable to be gainfully employed because he was unable to sit for any length of time and he could not bend or lift without severe pain was rendered many years after Plaintiff's date last insured.[4] (Tr. 20). Dr. Raheb gave no indication as to what time period his opinion applied. The ALJ also specifically mentioned that Dr. Raheb had only sporadically seen Plaintiff in the fifteen years between the 1987 operation and the 2002 report. Id. Further, medical source opinions on dispositive issues, such as whether a claimant is able to work, are not medical opinions, but are, instead, opinions on issues reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Thus, the ALJ's decision to assign little weight to the opinion of Dr. Raheb was based on substantial evidence.

Finally, Plaintiff argues the ALJ did not specify the weight given to the opinion of Dr. Smith. (Doc. 14, p. 3). Plaintiff does not, however, refer to any specific opinion of Dr. Smith the ALJ should have assigned a specific weight. On November 3, 2003, Dr. Smith stated he would defer to Dr. Raheb's determination regarding Plaintiff's ability to work. (Tr. 419). However, in June 1997, months after Plaintiff's date last insured, Dr. Smith noted Plaintiff had been doing well until recently after he took some high cholesterol pills. (Tr. 420). Because Dr. Smith gave no opinion to assign specific weight,

---

[4] While the ALJ mistakenly asserted Dr. Raheb's opinion was from 2003, this error was harmless. Dr. Raheb's letter was dated December 23, 2002. (Tr. 363).

the Court finds the ALJ did not err in failing to give a specific amount of weight to Dr. Smith's opinion.

### 3. Whether the ALJ erred in failing to have a medical expert testify as ordered by the Appeals Council

Plaintiff briefly argues the ALJ failed to follow the April 20, 2007 Order of the Appeals Council when he declined to have a medical expert testify as to the nature and severity of his impairments through his date last insured. (Doc. 14, p. 3-4). The Commissioner responds that because, on remand, the ALJ found Plaintiff's impairments severe, no medical expert testimony was necessary. (Doc. 15, p. 14). The Court agrees with the Commissioner. The instant case was remanded because the ALJ did not find Plaintiff's impairments severe. (Doc. 14, pp. 21-22). On remand, the ALJ was ordered to obtain evidence from a medical expert only to clarify the nature and severity of Plaintiff's impairments. Id. Thus, because the ALJ determined on remand that Plaintiff's impairments were severe, no medical expert testimony was necessary.

### 4. Whether the ALJ erred by failing to recognize all of Plaintiff's impairments as severe

Plaintiff also argues the ALJ failed to acknowledge all of his severe impairments. (Doc. 14, pp. 11-12). Specifically, Plaintiff seemingly asserts the ALJ should have found that his severe impairments included pain and irritable bowel syndrome. Id. Additionally, Plaintiff argues Plaintiff's severe impairments should have included an inability to stoop, inability to lift, difficulty pushing and pulling, and a lack of bilateral manual dexterity. Id. The Commissioner responds that the ALJ properly determined Plaintiff's severe impairments during the relevant period. (Doc. 15, pp. 14-15).

Plaintiff first argues the ALJ should have included pain as a separate severe impairment. (Doc. 14, pp. 11-12). However, the record shows the ALJ considered Plaintiffs statements concerning the intensity, persistence, and limiting effects of his symptoms and determined they were not entirely credible. (Tr. 23). Second, Plaintiff states the ALJ should have included irritable bowel syndrome as a separate severe impairment. (Doc. 14, pp. 12). However, the ALJ expressly considered Plaintiff's diarrhea in his decision. (Tr. 18). While acknowledging Plaintiff was diagnosed with irritable bowel syndrome in 2001, the ALJ did not find Plaintiff's diarrhea a severe impairment during the relevant period. Id. As explained supra, severity "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter, 791 F.2d at 1547. Here, there was no evidence Plaintiff's diarrhea was severe in terms of its effect on his ability to work during the relevant period.

Third, Plaintiff argues the ALJ should have found that an inability to stoop, inability to lift, difficulty pushing and pulling, and a lack of bilateral manual dexterity were severe impairments. However, the Court finds these "impairments" were actually limitations for incorporation into the ALJ's RFC determination if he found they existed. Additionally, Plaintiff cites to Dr. Suarez's report to support his contention that these limitations should have been included; however, the ALJ appropriately rejected the opinion of Dr. Suarez. Accordingly, the ALJ was not required to find that an inability to stoop, inability to lift, difficulty pushing and pulling, and a lack of bilateral manual dexterity were severe impairments during the relevant period. Thus, the ALJ properly considered Plaintiff's

other impairments and found them not severe during the relevant period.

### 5.    Whether the ALJ improperly determined Plaintiff's RFC

Plaintiff makes two arguments regarding the ALJ's RFC determination: the ALJ should have included Dr. Suarez and Dr. Sperber's opinions in Plaintiff's RFC and the ALJ should have discussed and given weight to the decision of the VA that Plaintiff was one-hundred percent disabled.  (Doc. 14, pp. 12-14).  The Commissioner argues the ALJ properly determined Dr. Suarez's opinion was not entitled to controlling weight; however, the Commissioner does not address Plaintiff's argument regarding the decision of the VA.  (Doc. 15, pp. 15-16).  The Court finds Plaintiff's arguments unpersuasive.

As the Court determined <u>supra</u>, the ALJ properly accorded little weight to Dr. Suarez's opinions.  Additionally, as the Court determined <u>supra</u>, there was no opinion from Dr. Sperber to accord significant weight.  Thus, the ALJ did not err when he failed to base his RFC determination on those opinions.  To the extent Plaintiff argues the ALJ erred by basing his RFC determination solely on the opinions of non-examining consultants,[5] the Court does not agree.  As the Commissioner correctly states, Plaintiff bore the burden of proving he was disabled and was responsible for producing evidence in support of his claim.  <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1276 (11th Cir. 2003); <u>see also</u> 20 C.F.R. § 404.1512(a), (c).  The opinions of both Dr. Suarez and Dr. Sperber were appropriately given less than controlling weight and, after a full decade, a new consultative examination would not have been helpful regarding the relevant period.

---

[5] Plaintiff cites <u>Swindle v. Sullivan</u> for the proposition that the opinions of state agency physicians alone cannot constitute substantial evidence upon which to base a decision.  914 F.2d 222, 226 n.3 (11th Cir. 1990).

Moreover, in <u>Swindle</u>, the ALJ improperly determined the plaintiff was not entirely credible and his RFC determination mirrored that of a state agency consultant. However, in the instant case, the ALJ appropriately refuted the other opinion evidence of record and apparently gave Plaintiff the benefit of the doubt, as the state agency consultants found Plaintiff capable of medium-level work (Tr. 363-71, 372-79) and the ALJ found Plaintiff capable of only light work. (Tr. 19). Thus, the ALJ did not err in relying on the evidence he had to make his RFC determination.

Plaintiff also argues the one-hundred percent disability determination by the VA should have been discussed and given great weight. (Doc 14, p. 13). Plaintiff is correct that decisions of the VA are normally given great weight. <u>Kieser v. Barnhart</u>, 222 F.Supp.2d 1298 n.4 (M.D. Fla. 2002) (citing <u>Olson v. Schweiker</u>, 663 F.2d 593, 597 n.4 (5th Cir. 1981); <u>Rodriguez v. Schweiker</u>, 640 F.2d 682, 686 (5th Cir. 1981); <u>Hogard v. Sullivan</u>, 733 F.Supp. 1465, 1470 (M.D. Fla. 1990)). However, in the instant case, the VA's decision to award Plaintiff one-hundred percent disability was for impairments the ALJ found not severe during the relevant period. (Tr. 18, 199-202). Additionally, the VA based its decision on records dated after Plaintiff's date last insured. (Tr. 200). Thus, the ALJ's decision not to discuss the VA's determination of disability was inconsequential because the determination consisted of findings not pertinent to the relevant period. <u>Cf. Brown v. Massanari</u>, 21 Fed. Appx 541 (8th Cir. 2001) (holding an ALJ's failure to discuss explicitly the VA's determination of disability was inconsequential because the determination consisted of only two pages and reported findings were not supported in the record before the ALJ). Therefore, the ALJ did not err in determining Plaintiff's RFC.

### 6.    Whether the ALJ failed to present a complete hypothetical to the VE

Plaintiff also argues the ALJ failed to present a complete hypothetical to the VE. Specifically, Plaintiff argues the ALJ should have included in his hypothetical to the VE: Dr. Suarez's opinions, more limitations based on Plaintiff's heart problems, side effects from medication, and frequent use of the bathroom.  (Doc. 14, pp. 14-16).  While only responding to Plaintiff's argument regarding Dr. Suarez, the Commissioner asserts the ALJ was not required to including findings he properly rejected as unsupported in his hypothetical to the VE.  (Doc. 15, p.16).  As discussed supra, the ALJ properly rejected the opinions of Dr. Suarez and did not find Plaintiff's issue of diarrhea disabling during the relevant period.  Because the ALJ properly rejected Dr. Suarez's opinions and found Plaintiff's diarrhea impairment was not severe, he was not required to include those findings in his hypothetical to the ALJ.  See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

Regarding his heart impairment, Plaintiff argues the ALJ did not include any limitation despite finding it a severe impairment.  (Doc. 14, pp. 15-16).  Interestingly, Plaintiff even asserts the ALJ did not include restrictions on Plaintiff's ability to climb in his hypothetical to the VE.  Id.  However, in both his final RFC determination (Tr. 19) and his hypothetical to the VE (Tr. 518), the ALJ included a restriction on Plaintiff's ability to climb based on Plaintiff's heart condition.  (Tr. 21).  Additionally, it appears the ALJ considered the heart condition in determining Plaintiff was capable of only light work as a whole, noting "[Plaintiff] thus should have been able to perform 'light' work duties [in safe settings] despite the cardiac component to his conditions."  (Tr. 22).  Because there is no

indication the record supports any other limitations as a result of Plaintiff's heart impairment, the ALJ appropriately included Plaintiff's severe heart impairment in his consideration of Plaintiff's RFC.

Regarding Plaintiff's asserted side effects from heart medication, Plaintiff argues depression, fatigue, and muscle ache should have been included in the ALJ's hypothetical to the VE. (Doc. 14, pp. 15-16). As discussed supra, however, the Court finds the ALJ properly determined Plaintiff's statements regarding his symptoms were not entirely credible. (Tr. 23). Additionally, there was no evidence the side effects of Plaintiff's medication had any effect on his ability to work. As noted supra, severity "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter, 791 F.2d at 1547. Thus, the ALJ was not required to include Plaintiff's alleged medication side effects in his hypothetical to the VE.[6]

### 7.    Whether the ALJ's step four analysis was incorrect

Lastly, Plaintiff asserts the ALJ incorrectly analyzed Plaintiff's ability to do past work. (Doc. 14, pp. 16-18). Specifically, Plaintiff argues that because the determinations at all other steps were incorrect, the conclusion that Plaintiff could perform his past relevant work was incorrect. Id. Additionally, Plaintiff argues the ALJ mischaracterized Plaintiff's past relevant work and that there was no evaluation of the lay testimony in the record. (Tr. 17-18). Because the Court has already determined the ALJ did not err at

---

[6] Plaintiff also refers to a hypothetical to the VE on page 527 of the record regarding Plaintiff having to lie down and being fatigued. (Doc. 14, p. 16). The Court did not find a page 527 in the record; however, the only hypothetical to the VE which included reclining did not mention fatigue. (Tr. 522).

steps one through three, it will consider Plaintiff's other arguments in turn.

Plaintiff asserts the ALJ mischaracterized Plaintiff's past relevant work as a manager.  (Doc. 14, p. 17).  However, to the extent the ALJ mischaracterized Plaintiff's past relevant work in his decision, such mistake was harmless because the VE testified Plaintiff was capable of a sales position as performed in the national economy.  (Tr. 518). Additionally, the duties Plaintiff claims the ALJ mischaracterized were not included in the hypothetical to the VE.  Thus, the ALJ did not err at step four by mischaracterizing Plaintiff's past relevant work.

Citing <u>Lucas v. Sullivan</u>, 918 F.2d 1567 (11th Cir. 1990), Plaintiff also argues the ALJ should have analyzed the "lay testimony" of Mr. Gustafson, Ms. Franklin, Mr. Palmer, and Mr. Black.  (Tr. 145, 146, 147, 345).  However, after noting the ALJ failed to consider lay testimony, the Eleventh Circuit in <u>Lucas</u> remanded to the ALJ with instructions to: "state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence, including all testimony presented *at the . . . hearing.***"** <u>Lucas</u>, 918 F.2d at 1574 (emphasis added).  Thus in <u>Lucas</u>, the witnesses testified under oath at the hearing <u>id.</u>; however, in the instant case, the "lay testimony" came in the form of letters.  (Tr. 145, 146, 147, 345).  Additionally, the ALJ did mention Mr. Gustafson's 2001 letter but concluded he may still have had an interest in aiding Plaintiff's claim.  (Tr. 23).  Therefore, the ALJ did not err by failing to extensively discuss the "lay testimony" of Mr. Gustafson, Ms. Franklin, Mr. Palmer, and Mr. Black.

## V.     CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence and is based upon the proper legal standards.  Accordingly, it is hereby

**RECOMMENDED**:

The Commissioner's decision be **AFFIRMED**.


**DONE AND ENTERED** at Jacksonville, Florida, this __31st__ day of July 2009.



_Monte C. Richardson_

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
The Honorable Steven D. Merryday,
    United States District Judge